UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal No. 09-184-B-W |
| v. ) | |
| ) | |
| BENJAMIN SMALL, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO
MOTION TO DISMISS INDICTMENT**

Defendant, by and through his undersigned attorney, submits this reply to the
Government's response (Document # 15) to his Motion to Dismiss Indictment (Document
#10).

Mr. Small moved to dismiss on two grounds: That the deprivation of his right to
bear arms pursuant to the Second Amendment does not withstand either strict or
intermediate scrutiny, and that the method in which the First Circuit has construed the
term "commitment" in 18 U.S.C. § 922(g)(4) renders that statute unconstitutional
pursuant to the Due Process Clause of the Fifth Amendment.

**A.     Section 922(g)(4) violates the Due Process Clause as construed by the
First Circuit:**

The Government begins the discussion of Mr. Small's Due Process challenge to §
922(g)(4) by misconstruing it as a challenge to the procedures set forth in 34-B M.R.S.A.
§ 3863.  That is not the challenge Mr. Small makes.  He is not challenging his emergency
admission.  His is not challenging the State of Maine's ability to have performed that
emergency admission.  He is not even challenging the First Circuit's decision that such an

emergency admission constitutes a "commitment" within the meaning of § 922(g)(4). Rather, he is moving to dismiss the Indictment because, once the term "commitment" is defined as an emergency admission under 34-B M.R.S.A. § 3863, rather than the commitment proceedings set forth in 34-B M.R.S.A. § 3864, 18 U.S.C. § 922(g)(4) become unconstitutional as so construed and applied.  Because the First Circuit has not answered the question as to whether application of this statute in this manner violates the Due Process Clause of the Fifth Amendment, the issue is one of first impression.

The Due Process violation results in taking what is a very limited and temporary intrusion into a person's liberty interests, as carefully circumscribed by the limited nature of detention under § 3863, and depriving a person permanently of a core constitutional right based on such a proceeding.  The State of Maine has not committed the Due Process violation.  The Federal Government has.

In accord with the idea that Due Process protections are flexible depending on the nature of the intrusion at issue, *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), the State of Maine may perform a limited intrusion into Mr. Small's custodial status in order to determine whether he presents a danger to himself or others.  This is akin to the temporary detention based on a warrantless arrest condoned in  *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975)(warrantless arrest justified by fear of suspect's flight; once suspect is in custody, no justification exists for dispensing with neutral judicial officer's finding of probable cause).   The State could *detain* Mr. Small in a mental hospital pursuant to such procedure, but it could not permanently intrude upon his liberty interests without either his consent, or a formal hearing before a neutral judicial officer that otherwise complied with certain basic requirements of Due Process.  *See* 34-B M.R.S.A. § 3863(5) (setting forth procedures for continued hospitalization after emergency

2

admission).  The time frame allowed for involuntary detention in a mental hospital is three days, *see id.*, which is similar in nature and scope to the allowable detention on a warrantless arrest.  *See Gerstein*, *supra*.  The State of Maine already allows for the type of procedures the Government argues would be too burdensome to mandate.  *See* 34-B M.R.S.A. § 3464.  Therefore, any argument relying on an increased burden to the State or an adverse effect on mental health care overall is specious.

Interestingly, the constitutional challenge levied by Mr. Small was not considered by the First Circuit in its decision in *United States v. Chamberlain*, 159 F.3d 656 (1st Cir. 1998).  Rather, that decision was limited to the meaning of the word "commitment" for purposes of § 922(g)(4).  The Court did not consider whether, once the emergency admission procedure was deemed a qualifying "commitment," Section 922(g)(4) could remain a constitutional enactment given the procedural limitations on long-term deprivation of liberties attendant upon such a "commitment."  *See Addington v. Texas*, 441 U.S. 418 (1979).

The instant motion takes *Chamberlain* as controlling precedent.  However, *Chamberlain* does not answer the constitutional question posed.  Therefore, *Chamberlain* cannot be used to dispose of the instant motion to dismiss.  Rather, the constitutional question only arises because *Chamberlain* construed the federal statute in the manner in which it did.  This constitutional question does not arise in other jurisdictions that have construed the statutory term "commitment" in a manner consistent with the Due Process requirements set forth by the Supreme Court for a valid involuntary commitment procedure.  *See e.g. United States v. Giardina*, 861 F.2d 1334, 1335 (5th Cir.1988); *United States v. Hansel*, 474 F.2d 1120, 1122-23 (8th Cir.1973); *United States v. Waters*, 23 F.3d 29 (2nd Cir. 1994).

Because the Government fundamentally misapprehends the basis for the Defendant's Motion to Dismiss, it is entirely off-base in arguing that Mr. Small seeks to change, or add any burden to, the State of Maine's emergency admission or involuntary commitment proceedings. The State of Maine has it right. The *Chamberlain* decision, by adopting a portion of that statute that is, at most, a temporary and limited remedy and rendering it a permanent disability, is the "fly in the soup." Granting the instant motion will have no effect at all on the State's emergency admission procedures, nor its ability to care for the mentally ill.

Finally, the Due Process argument lodged by Mr. Small is not the Due Process argument considered by the district court in *United States v. Milheron*, 231 F.Supp.2d 376 (D.Me. 2002). Mr. Milheron was not deemed to have an individual liberty interest to bear arms under the Second Amendment. *See id.* at 378 (finding no individual Second Amendment right). That legal determination has since been found to be incorrect. *See Heller v. District of Columbia*, 128 S.Ct. 2783 (2008). Further, the issue answered in *Milheron* was one of notice. The issue brought by Mr. Small is one of substantive Due Process: Can a fundamental right, which includes bodily integrity not to be involuntarily treated *or* indefinitely detained in a mental hospital, as well as other liberty interests (such as one's Second Amendment rights) be permanently deprived without following certain procedures? The Supreme Court has answered this question in the negative. *See Addington*, *supra*; *Vitek v. Jones*, 445 U.S. 480 (1980); *Ingraham v. Wright*, 430 U.S. 651, 673 (1977). *Milheron* did not answer the substantive Due Process question because it found no individual right that was being permanently deprived upon a statute that was designed for a temporary and limited purpose.

Neither does the opinion in *United States v. Vertz*, 40 Fed.Appx. 69 (6th Cir. 2002) answer the question presented by Mr. Small's motion.  The Court there opined that "the federal interpretation of the term 'commitment' should be so reliant on the terminology chosen by an individual state.  To accept such a proposition would be to sacrifice any hope of a uniform application of the federal statute.  Any state could expand or limit the scope of the federal firearms statute at will by merely changing the labels they place on their involuntary hospitalization procedures."  *Id.* at 74-75.  Rather, Mr. Small argues that a valid "commitment" to a mental hospital has been defined by the United States Supreme Court, and that state laws may use whatever process they deem most desirable, as long as those procedures ultimately comply with the Due Process requirements established for a valid mental hospital commitment.  Maine's statutes do this.  The First Circuit's selection of which part of those statutes qualify as a "commitment" for purposes of § 922(g)(4) does not.

As noted above, there are jurisdictions, such as the Second, Fifth and Eighth, that measure what a "commitment" is, not only against a state's definition, but also find that only those "commitments" subject to Due Process protections outlined in *Ingraham* and its progeny protections qualify as prohibitory events.  Such construction of § 922(g)(4) would comply with the Fifth Amendment.  However, because the First Circuit has not so construed § 922(g)(4), its application to Mr. Small renders the statute unconstitutional.  If the First Circuit were to construe § 922(g)(4) in the same manner as the Second, Fifth and Eighth Circuits, this issue would not arise.  However, neither would Mr. Small be subject to the instant prosecution.  Therefore, as this Court is required to accept the statutory construction supplied by *Chamberlain*, it must now also apply *Addington*, *Vitek*, and *Ingraham* and declare the statute unconstitutional as applied.

**B.    The Government has failed to provide evidence that applying §
922(g)(4) to those who have not been "committed" pursuant to the
basic requirements of Due Process as outlined in *Addington, Vitek,* and
*Ingraham* passes intermediate scrutiny necessary for depriving an
individual of his Second Amendment rights**

Mr. Small moves to dismiss the Indictment not only on Fifth Amendment grounds,
but also on Second Amendment grounds.  The Government is correct in stating that §
922(g)(4) does not preclude all those who are deemed "mentally ill" to be prohibited from
firearm possession.  The Supreme Court's shorthand reference in *Heller* to the "mentally
ill" may have been to those who have been subject to mental health commitments
complying with the process due under the Fifth Amendment.  However, because *Heller*
did not involve a challenge to the application of § 922(g)(4) to those not provided such
procedural protections, it is unclear whether this reference disposes of the question.  Mr.
Small argues that it does not.

He does so based on the Seventh Circuit's decision in *United States v. Skoien*, 587
F.3d 803 (7th Cir. 2009), which involves a challenge to 18 U.S.C. § 922(g)(9).  In
addressing this challenge, the Seventh Circuit made some useful observations.  First, it
held that the statement in *Heller* stating that the laws disarming felons are "presumptively
lawful" does not dispose of other firearm prohibitions.  *See id.* at 808.  Instead, it
concluded that all "gun laws–other than those like the categorically invalid one in *Heller*
itself–must be independently justified."  *Id.*

In other words, in determining how the Government can justify the prohibition at
issue, the basis for the law must be analyzed.   For instance, section 922(g)(1), having
nothing to do with violence, need not establish a nexus between the nature of the prior
offense and future violence.  This is because felons traditionally have been deprived of
core civil rights based on the fact of a prior conviction, whereas those convicted of

misdemeanors historically have not similarly been so deprived.    Regarding the mentally ill, "[t]he state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." *Addington*, 441 U.S. at 426. However, in so stating, defining the interest of a State, the converse also holds true that it does not have the ability to intrude on the lives of those who are mentally ill who are able to care for themselves or who do not suffer from dangerous tendencies due to their illness.  Therefore, the Government's assertion that Congress could enact a disability on all who may be deemed "mentally ill" at any time for any reason does not comply with the limitation recognized by the Supreme Court on a government's ability to so deprive its citizenry of core constitutional rights.

The Government's citation to "horrific firearm violence in mass shootings," Govt Memo at 8, does not justify disarming all civilians.  *Heller* stands for at least that much. Society's interest in punishing gun violence is usually addressed through statutes that make such activity criminal.  This is the essence of a government's police power.  If Mr. Small had engaged in any conduct that could be prosecuted as criminal, other than the status offense with which he is currently charged, then he would be subject to those laws controlling the use of firearms.  However, he is not alleged to have engaged in any misconduct with the firearm, and there is no reason to believe he would engage in misconduct with the firearm because there had never been any finding, by a neutral and detached judicial officer after a hearing, that Mr. Small presents a danger due to his mental status.

What *Skoien* teaches us is that, unlike those instances in which fundamental rights are not at issue, Congress cannot rely simply on a rational basis to enact restrictions it believes to be beneficial.  However, when fundamental rights are at stake, Congress has to exercise more care in formulating restrictions.  In this instance,  there has to be a "fit" between those who are known to commit the targeted activity (violent acts) and those who are subject to the restriction on their liberty.  The Government concedes that "certainly not all persons suffering from mental illness are inherently dangerous... ."  Govt memo at 10.  Because that is true, Congress cannot disarm the mentally ill as a class, but only those who have been found to be dangerous to themselves or others due to such illness.  The forum in which such question is addressed, in Maine, is pursuant to a hearing held under 34-B M.S.R.A. § 3864.

No such hearing was deemed necessary regarding Mr. Small, as he was not deemed to be a continuing danger to himself or others.   Therefore, the Government has not established that Mr. Small falls within a class of those who are "inherently dangerous" due to a mental illness and therefore deprived of an individual right otherwise guaranteed pursuant to the United States Constitution.  Without such a showing, any misconduct committed by Mr. Small with a firearm should be prosecuted pursuant to laws proscribing such conduct.  If Mr. Small is convicted of a felony under the laws of the State of Maine for his conduct, then he will be prohibited from possessing a firearm as a felon.  Where a person does not engage in such deleterious conduct, they should not be subject to prosecution and potential punishment.  Thus, absent a prior proceeding complying with Due Process protections in which it is established that a person can be deprived of a core constitutional right, application of § 922(g)(4) is not otherwise

narrowly tailored to address the harm sought to be avoided, and therefore is unconstitutional as applied.

## CONCLUSION

For the foregoing reasons, Mr. Small requests that the Court grant his motion to dismiss the Indictment as being brought pursuant to a statute that is unconstitutional as applied under the Second and Fifth Amendments to the United States Constitution.

Dated: January 21, 2010

Respectfully submitted,

/s/ *Virginia G. Villa*

VIRGINIA G. VILLA
Assistant Federal Defender
Attorney for Defendant

Key Plaza-Second Floor
23 Water Street
Bangor, ME 04401
(207) 992-4111
Virginia.Villa@fd.org

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

Certificate of Service

I hereby certify that on January 21, 2010 I electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

James Moore, Assistant U.S. Attorney.

/s/ *Virginia G. Villa*
Assistant Federal Defender